

STATE OF OKLAHOMA
LOGAN COUNTY  SS:
FILED FOR RECORD
2025-08-19 am 11:26

IN THE DISTRICT COURT OF LOGAN COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| SAMANTHA HAYNES and CALEB HAYNES, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CJ-25-182 ) |
| HOMESITE INDEMNITY COMPANY and AFICS, INC., | ) ) ) |
| Defendants. | ) |

# PETITION

Plaintiffs Samantha Haynes and Caleb Haynes, for their Petition against Homesite Indemnity Company, allege and state:

1. Plaintiffs are residents and citizens of Logan County, and the insured property is located in Logan County, Oklahoma.

2. Homesite Indemnity Company ("Homesite") is a foreign insurance company domiciled in Wisconsin with its principal place of business in Massachusetts.

3. AFICS, Inc. ("AFICS") is a third-party administrator, administering claims on behalf of Homesite Indemnity Company. It is a foreign insurance company domiciled in Wisconsin with its principal place of business in Wisconsin.

4. Plaintiffs were insured by Homesite policy no. 42316019 when their home was damaged as the result of severe weather in May 2025.

5. In late 2024, Plaintiffs contacted a number of insurers seeking to obtain desired coverage. Plaintiffs specifically sought replacement coverage for the roof of their home. They were emphatic that they be insured for the cost to replace their roof, less the deductible. They expressly and repeatedly stated their requirement that they not be limited to the actual cash value of the roof.

**EXHIBIT 1**

6. On or about December 14, 2024, Plaintiffs contacted Progressive and spoke with an agent regarding their insurance needs. The conversation explicitly included their desire to have full replacement coverage for their roof. Plaintiffs disclosed that the roof had been on the home since 2006, when it was constructed. The agent acknowledged their concerns and assured them he would obtain the requested coverage. He also stated that Progressive would conduct an inspection of the home as part of the approval process for coverage.

7. That same day, Plaintiffs purchased the insurance from "Progressive Home, by Homesite," which was underwritten by Homesite.

8. Defendants' agent plainly failed to secure the requested coverage, either intentionally or negligently. Defendants' agent also, negligently or intentionally, misrepresented the terms of the policy and the coverage that would be afforded to Plaintiffs. The agent also failed to disclose that Homesite would never pay any amount of roof damages, given the inflated deductible and the depreciation provision which directly conflicted with the coverage Plaintiffs sought and the agent promised.

9. After the storm, Plaintiffs contacted Progressive/Homesite regarding the damage to their home. At the time, Defendants did not inform Plaintiffs of the true nature of the policy issued by Homesite – specifically, that Homesite would virtually never have to pay a claim for damages to Plaintiffs' roof.

10. Homesite had not issued the policy as requested by Plaintiffs and represented by the agent. Rather it has surreptitiously included an amendment to the policy (i.e., altering the standard policy), to include a term on page 46 of the 52 page packet sent to Plaintiffs which would depreciate the value of the roof for any payment for complete replacement.

**EXHIBIT 1**

11. In addition, Homesite had substantially overinsured the property, over double the 2021 purchase price. Given Homesite was applying a 2 percent wind-hail deductible, Homesite doubled the deductible for any wind-hail damage, while avoiding any additional exposure given the actual value of the home.

12. As the result of inflated deductible, the depreciation clause and the age of the roof, Homesite knew it would never have to pay a roof claim on Plaintiffs' property. It failed to inform Plaintiffs of this information when it issued the policy and when Plaintiffs reached out about filing a claim.

13. Instead, Homesite/AFICS began to "investigate" and "evaluate" Plaintiffs' claim, knowing all the while that it would never pay anything on the claim and its efforts were merely a pretext for denying the claim.

14. Unsurprisingly, Homesite/AFICS found that the roof was a total loss, without meaningfully evaluating the actual condition of the roof. Homesite/AFICS generically noted that "the percentage of non-recoverable depreciation was based on our inspection of your roof, its age of 19 years, condition, and useful life." However, the calculations applied establish that Homesite/AFICS used a simple mathematical formula based on age and its assumptions regarding the life of the item at issue and did not make a single adjustment based on the inspection, condition or useful life of the items at issue. There is no explanation for how Homesite/AFICS determined the useful life of the various items or that it even actually observed the items (i.e., how the inspector determine what felt was used and the condition of that felt when covered by shingles). The estimate was also incomplete, as it failed to consider relevant items like gutters and other damages to elevations.

EXHIBIT 1

15. Ultimately, Homesite/AFICS determined that the cost to repair damages to the home was $16,960.49 and that non-recoverable depreciation was $9,715.19. Given the inflated deductible of $8,260.00, Homesite/AFICS determined it would not pay a penny for the storm damages it determined existed to the home.

16. Again, this was no surprise, as Homesite/AFICS knew at the time the policy was issued that it would never pay damages to Plaintiffs' roof given its age and the way it systematically and improperly calculated depreciation.

17. By conducting a "show" inspection and investigation, Homesite/AFICS unnecessarily detailed its determination (given the conclusion was foregone). Because Homesite/AFICS failed to disclose that it would never pay the roof claim, Plaintiffs unnecessarily filed the claim and now have a claim on their record, making it more difficult to obtain insurance and then only at a higher premium.

18. In failing to perform their duties to Plaintiffs, Defendants breached the duty of good faith and fair dealing owed to Plaintiffs, causing significant frustration, distress and delay.

19. On information and belief, Homesite/AFICS engage in a pattern to collect premiums that would purport to cover roofing losses while knowing such claims will never be paid. They overvalue depreciation by applying a simple mathematical formula rather than actually following their own representations. Given the outcome is predetermined, Homesite/AFICS purported investigation and evaluation serve only to delay the outcome of such claims.

20. Based on information and belief, Homesite/AFICS acted recklessly and/or intentionally, entitling Plaintiffs to recovery of punitive damages.

EXHIBIT 1

WHEREFORE, Plaintiffs prays for judgment against Defendants for damages, plus attorney fees, costs, and pre-judgment interest, in an amount in excess of the limits for federal diversity jurisdiction.

Respectfully submitted,

_/s/ Gerard F. Pignato_

GERARD F. PIGNATO, OBA #11473
MATTHEW C. KANE, OBA #19502
**RYAN WHALEY, PLLC**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
(405) 239-6040
(405) 239-6766 FAX
jerry@ryanwhaley.com
mkane@ryanwhaley.com

and

SUSAN F. KANE, OBA # 19455
**KANE ADVOCATES**
629 W Main Street
Oklahoma City, OK 73102
(405) 438-4357
skane@kaneadvocates.com
ATTORNEYS FOR PLAINTIFFS

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

**EXHIBIT 1**